UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THERESA PAGE,

    Plaintiff,                        CIVIL ACTION NO. 16-cv-11947

    v.                                DISTRICT JUDGE DAVID M. LAWSON

COMMISSIONER OF               MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Theresa Page seeks judicial review of Defendant Commissioner of Social Security's determination that she is entitled to social security benefits for her physical and mental impairments under 42 U.S.C. § 405(g) from February 1, 2013 through June 24, 2014, but not thereafter. (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 15) and Defendant's Motion for Summary Judgment (docket no. 16). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.     **RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 15) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 16) be **GRANTED**.

## II. PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability and disability insurance benefits with protective filing dates of May 22, 2013, alleging that she has been disabled since February 1, 2013, due to neck and shoulder pain, migraine headaches, and depression. (TR 13, 135–41, 186.) The Social Security Administration denied Plaintiff's claims on September 12, 2013, and Plaintiff requested a *de novo* hearing. (TR 12, 60, 87–88.) On December 18, 2014, Plaintiff appeared with a representative and testified at the hearing before ALJ Regina Sobrino. (TR 33–52.) In a May 12, 2015 decision, the ALJ found that Plaintiff was disabled from February 1, 2013 through June 24, 2014, but she was not entitled to benefits beyond June 24, 2014, because a medical improvement occurred that rendered her capable of performing a significant number of jobs in the national economy. (TR 12–27.) The Appeals Council declined to review the ALJ's decision (TR 1–5), and Plaintiff commenced this action for judicial review. The parties then filed cross motions for summary judgment, which are currently before the Court.

## III. HEARING TESTIMONY AND MEDICAL EVIDENCE

In her brief, Plaintiff sets forth the procedural history of this matter and provides a detailed summary of the relevant medical evidence and hearing testimony. (Docket no. 15 at 6–12.) The ALJ sets out a detailed, factual recitation with regard to Plaintiff's hearing testimony, Plaintiff's medical record, and the vocational expert's (VE's) testimony in his decision. (TR 16–20, 22–27.) Defendant adopts the ALJ's recitation of the facts. (Docket no. 16 at 4.) There are no material inconsistencies between Plaintiff's and the ALJ's accounts of the record; therefore, the undersigned will incorporate their factual recitations by reference. Additionally, the undersigned has conducted an independent review of Plaintiff's medical record and the hearing

transcript and will include comments and citations as necessary throughout this Report and Recommendation.

IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2013, the date she became disabled. (TR 15.) Next, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease, degenerative joint disease, a migraine headache disorder, and an affective disorder (depression/anxiety); however, these impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 16.) The ALJ then found that Plaintiff was under a disability from February 1, 2013, through June 24, 2014, because she had a residual functional capacity (RFC) that did not allow for the performance of past relevant work or any other jobs existing in significant numbers in the national economy, because she "would have been expected to miss more than one workday per month." (TR 17–20.) The ALJ found that a medical improvement related to the ability to work occurred as of June 25, 2014, such that Plaintiff had the RFC to perform a limited range of sedentary work and would not be expected to miss more than one workday per month. (TR 22–27.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was still unable to perform past relevant work, but she was capable of performing a significant number of others jobs in the national economy beginning June 25, 2014. (TR 22–27.) The ALJ concluded that Plaintiff was disabled under the Social Security Act from February 1, 2013, through June 24, 2014, and that her disability ended on June 25, 2014. (TR 17–21, 22–26.)

V. LAW AND ANALYSIS

A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc.*

*Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B. Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed for an award of benefits or remanded for further proceedings under sentence four because the ALJ's finding that a medical improvement occurred on June 25, 2014, is not supported by substantial evidence. (Docket no. 15 at 13–19.)

"In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision." *Shepherd v. Apfel*, 184 F.3d 1196, 1199 n.2 (10th Cir. 1999) (citation omitted). "Typically, both the disability decision and the cessation decision [in a closed period case] are rendered in the same document." *Id.* The medical improvement standard applies to cases involving a closed period of disability. *Id*. at 1200*; Niemasz v. Barnhart*, 155 F. App'x 836, 839–40 (6th Cir. 2005). Once a claimant has been awarded disability benefits, an ALJ must

find that there has been a medical improvement in the claimant's condition before terminating the claimant's benefits. Title 42 U.S.C. § 423(f) provides:

> A recipient of benefits under this subchapter . . . based on the disability of any individual may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by –
>
> (1) substantial evidence which demonstrates that –
>
> > (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
>
> > (B) the individual is now able to engage in substantial gainful activity.

42 U.S.C. § 423(f)(1). Any decrease in severity of the claimant's impairment meets the statutory standard for medical improvement. *See* 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(c)(1) ("Medical improvement is any decrease in the medical severity of impairment(s) present at the time of the most recent favorable medical decision that you were disabled . . . ."). Medical improvement "is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)." 20 C.F.R. § 404.1594(c)(1). In determining whether medical improvement that has occurred is related to a claimant's ability to do work, "[t]he residual functional capacity assessment used in making the most recent favorable medical decision will be compared to the residual functional capacity assessment based on current evidence in order to determine if [the claimant's] functional capacity for basic work activities has increased." 20 C.F.R. § 404.1594(c)(2), (3).

To support her finding that Plaintiff underwent medical improvement as of June 25, 2014, the ALJ cites office visit notes from Plaintiff's pain management doctor, Rama D. Rao, M.D.:

> The claimant saw Dr. Rao on June 25, 2014, and Dr. Rao reported that the claimant had had "50% decrease in pain and low back." The claimant was "functioning better with limited medications from primary [care physician]." The claimant's pain score was 5/10. The claimant denied weakness. On examination, the claimant was alert and oriented. Her extremities were "normal." The claimant had good motor strength, normal sensation, and "good" bilateral upper and lower extremities. There were no spasms and the plan was to "hold injections," follow-up with primary care physician, and continue strengthening and stretching exercises (Exhibit 8F/18).

(TR 22.) The ALJ then determined that the medical improvement experienced by Plaintiff is related to her ability to work because there had been an increase in Plaintiff's RFC. (TR 22.) Specifically, the ALJ's current RFC assessment does not include the ALJ's previous finding that Plaintiff would "have been expected to miss more than one workday per month." (*Compare* TR 17 *with* TR 22.) The ALJ noted that the absences expected during the closed period of disability would be "due to her impairments and treatment." (TR 20.) The ALJ specifically discussed how Plaintiff received injections to treat her back pain from her primary care physician, Rajakumari Swamy, M.D., on March 25, 2013, and received "additional injections" from Dr. Rao on March 21, April 14, April 18, May 5, August 22, and October 30, all in 2013. (TR 19–20.) In 2014, the ALJ notes that Plaintiff received "branch blocks" on May 8, and "epidural steroid injections" on June 5. (TR 20.) The record reflects that the only other injection Plaintiff received was for her shoulder, on July 24, 2014, from Dr. Rao. (TR 534.)

Plaintiff argues that the ALJ's medical improvement finding is not supported by substantial evidence the ALJ improperly discounted the opinion of Plaintiff's treating primary care physician, Dr. Swamy; because the injections from Dr. Rao "did nothing to correct

8

Plaintiff's underlying spinal impairments and Dr. Rao opined the pain relief would likely only be temporary," and because "mental health records also support [Plaintiff's] ongoing disability." (Docket no. 15 at 16, 18.) Each of these arguments fails.

### 1. The ALJ's Assessment of Dr. Swamy's Opinion

It is well settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When an ALJ determines that a treating source's medical opinion is not controlling, he must determine how much weight to assign that opinion in light of several factors: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

There is no *per se* rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)–(6). *Norris v. Comm'r of Soc. Sec.*, No. 11-CV-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the requisite factors may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*

of Soc. Sec., 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004)).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson*, 378 F.3d at 544 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). The district court should not hesitate to remand when the Commissioner has failed to identify the weight assigned to a treating physician's opinion and provide good reasons for that weight. *See Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

In November 2014, after the closed period of disability, Plaintiff's primary care physician, Dr. Swamy, completed a "Medical Assessment of Ability to do Work-Related Activities" form, and opined that Plaintiff was limited to standing or walking only 1–2 hours and sitting for 3 hours in an 8-hour workday. Dr. Swamy further opined that Plaintiff would miss 4–5 days of work per month, would be unable to work even at the sedentary exertional level without "several unscheduled rest breaks due to pain and/or fatigue," could never climb, balance, stoop, crouch, kneel, crawl, reach, handle, or bend, and could only occasionally push/pull, but

that Plaintiff had no environmental restrictions related to heights, moving machinery, temperature extremes, chemicals, dust/fumes, noise, or humidity. (TR 535–37.)

The ALJ gave Dr. Swamy's opinion "limited weight, particularly as it pertains to the period since June 25, 2014." (TR 25.) The ALJ found that Dr. Swamy's treatment records and clinical findings did not support such extreme restrictions, noting that Dr. Swamy's treatment notes "consistently describe the claimant as in no acute distress." (TR 25.) The ALJ also points out that, although Dr. Swamy opined that Plaintiff could not walk/stand more than two hours per day, Dr. Swamy also consistently observed that Plaintiff had an intact gait. (TR 25, 541, 546, 556, 564, 569, 582.) The ALJ also emphasizes a September 19, 2014 exam, in which Dr. Swamy found that Plaintiff's general health was good. (TR 26, 585.) At that exam, Dr. Swamy found that Plaintiff had normal reflexes and sensation and that Plaintiff's lower and upper extremities had normal strength. (TR 26, 588.)

The undersigned finds no error in the ALJ's assessment of Dr. Swamy's opinion. In support of her position that the ALJ improperly discredited Dr. Swamy's opinion, Plaintiff argues that "Dr. Swamy's records reflect ongoing complaints of neck and back pain, cervical and lumbar spinal tenderness on physical examination and Dr. Swamy referred Plaintiff to pain management for epidural injections to help control the pain." (Docket no. 15 at 15.) The ALJ expressly acknowledges these issues, however. (TR 25–26.) Moreover, the undersigned agrees with Defendant's argument that these facts do not detract from the normal findings which the ALJ relied upon, nor do they provide sufficient support for Dr. Swamy's opinion that Plaintiff had such extreme limitations. Indeed, in the Medical Assessment form, Dr. Swamy was asked, "What are the medical findings to support this assessment?" (TR 535.) Dr. Swamy did not list anything. (*Id.*) The ALJ was not required to give any particular deference to Dr. Swamy's

opinion as it is not supported by clinical and laboratory diagnostic evidence. The ALJ then explained that she was assigning only limited weight to Dr. Swamy's opinion because the opinion was not supported by Dr. Swamy's clinical findings and treatment history. (TR 25.)

Plaintiff also argues that the ALJ erred by accepting Dr. Swamy's opinion that Plaintiff will miss 4–5 days of work per month during the closed period, but then not accepting that opinion thereafter, particularly considering Dr. Swamy gave her opinion after the closed period. (Docket no. 15 at 16.) However, Plaintiff's characterization of the ALJ's analysis is not accurate. As Defendant points out, the ALJ only assigned partial weight to Dr. Swamy's opinion regarding Plaintiff's abilities during the closed period. (TR 20.) The ALJ did not fully adopt Dr. Swamy's opinion that Plaintiff would miss 4–5 days of work per month for the closed period; rather the ALJ found that Plaintiff would be expected to miss "more than one workday per month." (TR 17.)

The ALJ discusses the supportability of the opinion and its inconsistency with other record evidence in her assessment. She also discusses Plaintiff's treatment history with Dr. Swamy, and Plaintiff's other medical providers, at length. (*See, e.g.*, TR 19 ("There is imaging indicating progression of the cervical disc disease, which has been managed with injection therapy and prescribed pain medication. Regarding the lumbosacral spine, the claimant has degenerative disease that has been managed conservatively.").) Any failure by the ALJ to explicitly list and discuss the requisite factors in assessing Dr. Swamy's opinion is harmless error, as the undersigned finds that the ALJ has met the goal of § 1527(c) by providing good reasons for assigning "limited weight" to Dr. Swamy's opinion, and that the ALJ's opinion is sufficiently clear and specific to make clear to any subsequent reviewers the reasons for that weight.

2. *Pain Relief from Injections/Dr. Rao's Treatment Notes*

Next, Plaintiff contends that the ALJ erred in finding medical improvement based on the success of the injections in significantly reducing her pain levels, because, Plaintiff contends, the "injections from the pain specialist . . . did nothing to correct Plaintiff's underlying spinal impairments and Dr. Rao opined the pain relief would likely only be temporary." (Docket no. 15 at 18 (citing TR 528).) Page 528 of the transcript documents the recommendations that Dr. Rao made to Plaintiff prior to a cervical neck injection in 2014:

> The injections may cause more pain or infection. Paresis, paralysis and nerve damage can happen. Failure of these injections to relieve pain, exacerbation of the pain after the injections and effects of the steroids were discussed. Alternatives were discussed. If the patient gets pain relief, the typical pain relief may be temporary or may last longer. There is no guarantee to get relief. Any pain relief may typically last from days to months to years, depending on the patient. There may be temporary tenderness and bruising over the injection areas. The patient acknowledged understanding and agreed for [sic] the injections.

(TR 528.)

In other words, Dr. Rao gave a general warning to Plaintiff that the injection may not give her complete, permanent relief from her pain. He did not, as Plaintiff contends, find that Plaintiff's pain relief would only be temporary. And, in Plaintiff's case, it does appear that the injections provided substantial relief, and that the relief persisted. As discussed above, the injections afforded Plaintiff a 50% reduction in her lower back pain (as reported by Plaintiff to Dr. Rao on June 25, 2014), and allowed Plaintiff to function better "with limited medications from primary [care physician]." (TR 533.) Moreover, Plaintiff received at least six injections from Dr. Rao in a 7 month period in 2013, followed by "branch blocks" and "epidural steroid injections" in May and June, 2014. Thereafter, Plaintiff did not receive any further injections for her back, although she did have one in her shoulder in July 2014. (TR 534.) Plaintiff's hearing

13

date was December 18, 2014, more than six months after her last injection for her back, and well over one year after she had received the near-monthly injections in the first half of 2013. This timeline suggests that the pain relief Plaintiff was experiencing was persistent and long-lasting.

Even if the injections did not resolve Plaintiff's underlying medical conditions, it is undisputed that the injections did provide Plaintiff with a 50% reduction in pain. It was reasonable for the ALJ to conclude that such a significant reduction in pain would lead to fewer missed days of work, thereby increasing Plaintiff's RFC.[1]

Plaintiff discusses a number of Dr. Rao's notes which indicate that Plaintiff was still experiencing "persistent, severe lower back pain" as late as June 5, 2014, approximately three weeks before June 24, 2014, the end of the closed period of disability. (TR 527.) Plaintiff's reliance on these notes is somewhat misplaced, as the ALJ found Plaintiff to be disabled during this time; moreover, as discussed above, Plaintiff reported a 50% reduction in low back pain on June 25, 2014. (TR 533.) Plaintiff also emphasizes Dr. Rao's note from July 23, 2014, which indicates that Plaintiff was still experiencing "persistent severe pain around shoulders." (TR 534.) The ALJ, however, did not rely on a reduction in Plaintiff's shoulder pain; indeed the ALJ acknowledged that Plaintiff "continues to have limitations caused by her musculoskeletal impairments," and based on those limitations limited Plaintiff to "sedentary work that permits the use of both hands for any lifting, carrying, pushing, or pulling." (TR 24.) The ALJ further stated that "[d]ue to her neck and shoulder impairments, she cannot perform overhead reaching, and cannot do more than frequent reaching in other directions. She should not be exposed to

---

[1] The ALJ also relied on the fact that Plaintiff would have to miss fewer days of work to receive treatment. (*See* TR 20 ("From February 1, 2013 through June 24, 201[4], the claimant would have been expected to miss more than one workday per month due to her impairments and treatment.") The inference that Plaintiff would miss fewer days of work when she stopped receiving near monthly injections is also reasonable.

vibration." (*Id.*) The ALJ did not err in assessing Plaintiff's shoulder injury; Plaintiff's Motion should be denied in this regard.

    3.    *Plaintiff's Mental Health Records*

Plaintiff briefly argues that the ALJ erred in finding a medical improvement because, Plaintiff contends, the medical records of Plaintiff's treating psychiatrist, Dr. Vora, "do not support the ALJ['s] finding of a medical improvement in Plaintiff's conditions that would result in an increase in Plaintiff's functional capacity to do basic work activities." (Docket no. 15 at 19.) As Defendant points out (docket no. 16 at 12 n.3), however, the ALJ did not rely on an improvement in Plaintiff's mental health to find that Plaintiff had medically improved, and the ALJ assessed the same mental health limitations in Plaintiff's RFC for the closed period of disability and thereafter: "simple, routine, repetitive work not done [at] a production rate pace (e.g., no assembly-line work), with minimal changes in the work setting." (TR 17, 22.) In her Reply, Plaintiff (again, very briefly) argues that "[i]f anything, it would appear overall Plaintiff's condition was worsening as reflect[ed] by even the ALJ['s] finding that in July, 2014, Ms. Page began treating with Dr. Vora for her impaired concentration, difficulty sleeping and depression consistent with her ongoing pain complaints." (Docket no. 18 at 7.)

The undersigned finds no error with the ALJ's assessment of Plaintiff's mental health issues. The ALJ discusses Plaintiff's mental health history at length, and summarized it by noting that Plaintiff received "medication treatment" from the time of the alleged onset date until April 2013, "followed by a gap in mental health treatment until July 2014." (TR 23.) At that time, the ALJ notes, "[p]sychotherapeutic medications were adjusted, and by September 2014 positive response was reported and the GAF scores indicate moderate symptomatology." (*Id.*) The ALJ then discusses a January 2015 report from Consumer Services/Taylor Life Center, in

which a psychiatrist noted that Plaintiff had "moderate limitations in her ability to maintain attention and concentration for extended periods, . . . complete a normal workday or week without psychological interruptions or maintain a consistent pace without an unreasonable number of breaks," as well as "marked limitation in the ability to work in coordination with or proximity to others without being distracted, and a moderate limitation in the ability to accept instructions or respond appropriately to criticism, or get along with others." (TR 25.)

The ALJ assigned "limited weight" to the January 2015 report, noting:

> [T]he GAF scores and the mental health treatment notes document that the claimant responded positively to medication adjustments. There have been no hospitalizations or emergency room visits since the alleged onset date for mental health issues, and there is no clinical evidence in the progress notes reflecting more than mild limitation of social functioning. The claimant is described in the Consumer Services/Taylor Life Center records as having good to fair eye contact, clear and coherent speech, appropriate response to questions, and well-organized thoughts. She has had a restricted affect, but her insight and judgment are reported to be intact, she has appropriate hygiene, and she consistently is fully oriented and alert (Exhibit 11F). At the hearing, the claimant testified that she goes out into the community to shop (although early in the morning, to "get in and out") and drives to medical appointments. In September 2014, the primary care physician noted on review of systems that the claimant denied depression, anxiety or sleep disturbance (Exhibit 10F/50). The clinical findings support the conclusion that although the claimant has limitations in mental functioning, she retains the capacity for simple, routine, repetitive work not done [at] a production rate pace, with minimal changes in the work setting.

(TR 25.) Plaintiff does not challenge the ALJ's assessment of the January 2015 report, and the undersigned finds the ALJ's assessment to be thorough, well-reasoned, and well-supported.[2] Plaintiff does not point to any other evidence which suggests greater mental health limitations

---

[2] The ALJ assigned "significant weight" to the opinion of Dr. Thomas Tsai, a psychiatrist and state agency medical consultant. (TR 24.) Dr. Tsai found that Plaintiff "is able to understand, remember, and carry out simple instructions; make judgments that are commensurate with the functions of unskilled tasks, . . . respond appropriately to supervision, coworkers and work situations, and deal with most changes in a routine work setting. There are no problems with attention, and there is sufficient concentration to perform simply 1 & 2 step tasks, all on a routine and regular basis. (TR 72.) Plaintiff does not challenge the ALJ's decision to afford "significant weight" to Dr. Tsai's opinion; and the undersigned finds no error.

than those assessed by the ALJ, either during the closed period of disability or thereafter. Plaintiff's argument fails in this regard.

Finally, it worth noting that Plaintiff appears to argue in her Reply brief that the ALJ erred by failing to find that Plaintiff's medical improvement was related to Plaintiff's ability to work. (Docket no. 18 at 3–4.) This argument also fails. The ALJ found that Plaintiff's RFC was increased because, after the closed period of disability, Plaintiff would not be expected to miss more than one day of work per month. (*Compare* TR 17 *with* TR 22.)

The ALJ's decision concerning Plaintiff's medical improvement is supported by substantial evidence. As set forth above, the ALJ's decision was based on a 50% improvement in the pain levels in Plaintiff's lower back, one of her chief complaints, and the fact that Plaintiff's injection/treatment regimen was reduced after June 24, 2014, such that Plaintiff would be expected to miss fewer days of work than during the closed period.

## VI. CONCLUSION

For the reasons stated herein, the Court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 15) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 16).

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with

specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: May 23, 2017　　　　　　　s/ Mona K. Majzoub
　　　　　　　　　　　　　　　　MONA K. MAJZOUB
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: May 23, 2017　　　　　　　s/ Lisa C. Bartlett
　　　　　　　　　　　　　　　　Case Manager